IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| DANIEL THOMAS ROBBINS,<br>      Plaintiff,<br><br>      v.<br><br>THE CITY OF DES MOINES, IOWA,<br>Des Moines Police Detective BRAD<br>YOUNGBLUT and Des Moines Police<br>Lieutenant JOSEPH LEO, and<br>Des Moines Police Sergeant<br>CHRISTOPHER CURTIS,<br>      Defendants. | CIVIL ACTION No.: 4:18-cv-289<br><br>COMPLAINT AND JURY DEMAND |

## COMPLAINT

### PRELIMINARY STATEMENT

Documenting police officers' official duties by audio and video recording is expressive activity protected by the First Amendment to the U.S. Constitution.  This conduct is essential to monitoring police encounters with citizens.  Such protected activity cannot be suppressed by threat of criminal charges.  Nevertheless, Des Moines police officers routinely threaten to retaliate and criminally punish civilians who audio-record official police activity.

After exercising his First Amendment right to stand on a public sidewalk adjacent to the Des Moines Police Department station and record a police officer aggressively questioning him, Plaintiff Daniel Robbins was surrounded, detained, and threatened with arrest. And as a consequent of exercising his constitutional rights, the Defendant officers seized Robbins' camera and phone without probable cause or reasonable suspicion of criminal activity.  Their actions were designed and intended to retaliate against Mr. Robbins for exercising his rights under the First Amendment to criticize and record his

1

public officials. As such, they violated his rights under the First and Fourth Amendments to the United States Constitution.

This civil rights action seeks declaratory relief and damages.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this Complaint under the First, Fourth and Fourteenth Amendments to the United States Constitution and 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights) and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. This Court also has jurisdiction under 28 U.S.C. §§ 2201 and 2202 to declare the rights of the parties and to grant all further relief found necessary and proper.

2. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1402(b) because the acts at issue in this lawsuit occurred within the District.

## PARTIES

3. Plaintiff Daniel Thomas Robbins ("Robbins") is a citizen of the United States and at all relevant times was a resident of Des Moines, Polk County, Iowa.

4. Defendant Bradley Youngblut ("Youngblut") was at all times relevant to this Complaint a police officer with the City of Des Moines Police Department. In his capacity as a police officer for Des Moines, Defendant Youngblut had a legal obligation to act in conformity with the United States and Iowa Constitutions and other applicable federal and state laws. Defendant Youngblut is sued in his individual capacity and at all times relevant to this Complaint was acting within the scope and course of his employment with the City of Des Moines and the City of Des Moines Police Department. At all times relevant to this Complaint, he was acting under color of the laws of the State of Iowa and the City of Des Moines.

5. Defendant Christopher Curtis ("Curtis") was at all times relevant to this Complaint a police officer employed by the City of Des Moines Police Department. In his capacity as a police officer for Des Moines, Defendant Curtis had a legal obligation to act in conformity with the United States and Iowa Constitutions and other applicable federal and state laws. Defendant Curtis is sued in his individual capacity and at all times relevant to this Complaint was acting within the scope and course of his employment with the City of Des Moines Police Department. At all times relevant to this Complaint, he was acting under color of the laws of the State of Iowa and the City of Des Moines.

6. Defendant Joseph Leo ("Leo") was at all times relevant to this Complaint a police officer with the City of Des Moines Police Department. In his capacity as a police officer for Des Moines, Defendant Leo had a legal obligation to act in conformity with the United States and Iowa Constitutions and other applicable federal and state laws. Defendant Leo is sued in his individual capacity and at all times relevant to this Complaint was acting within the scope and course of his employment with the City of Des Moines and the City of Des Moines Police Department. At all times relevant to this Complaint, he was acting under color of the laws of the State of Iowa and the City of Des Moines.

7. Defendant City of Des Moines, Iowa ("Des Moines") is a municipal corporation existing and operating pursuant to the laws of the State of Iowa. The City of Des Moines is the public employer of the other Defendants in this matter and has a legal responsibility to operate according to the laws of the United States and the State of Iowa, including, but not limited to, the United States Constitution.

## FACTUAL ALLEGATIONS

8. Daniel Thomas Robbins ("Robbins") is an independent photo-journalist and videographer who resides in Des Moines, Iowa.

9. From 1985-1991, Robbins was a communications NCO (non-commissioned officer) with the Iowa Army National Guard (194th Field Artillery, Ft. Dodge) and was honorably discharged.

10. Robbins obtained his Associate of Applied Science (AAS) degree in radio broadcasting from Iowa Central Community College in 1986.

11. After graduation, Robbins became the News Director at KILR FM-95.9, AM-1070 in Estherville, Iowa.

12. As the News Director at KILR, Robbins had his reporting published on television stations in Sioux City and Fort Dodge and by the ABC radio network.

13. Beginning in December of 1995 and continuing through July of 1999, Robbins worked for Midwest Radio, Inc., then owner of KKDM-FM, 1075, until it was purchased by Clear Channel Communications. All KKDM employees, including Robbins were hired by Clear Channel.

14. Between 1999 and 2016, Robbins worked with iHeartRadio in Des Moines (formerly Clear Channel Communications, and since 2016, Robbins has been self-employed producing radio commercials, designing websites and shooting independent news stories.

15. On May 10, 2018, Robbins was walking along East 2nd Street in Des Moines – directly behind and adjacent to the Des Moines Police Department.

16. Robbins was standing on the sidewalk on the eastern side of East 2nd Street when he noticed there were an abundance of vehicles illegally parked across the street.



17. As was his habit, Robbins began taking pictures and shooting video.

18. Almost immediately upon commencing filming, Robbins noticed a Des Moines Police Officer - Angie l/k/u with Identification Unit - leaving the parking lot directly behind the Department and climbing into and moving an illegally-parked white Toyota Highlander.

19. After watching Angie's Highlander make a U-turn on East 2nd to head onto East Court Avenue, Robbins crossed the street to stand on the sidewalk behind the Des Moines Police Department.

20. As this point, a marked Des Moines Police vehicle rounded the corner and Officer "243" radioed police dispatch indicating she believed Robbins to be a suspicious person and falsely indicating that Robbins was "taking pictures" inside squad cars.

21. After some radio traffic about who would respond to the call, Officer 243 drove slowly past Robbins on East Second and stopped just short of the railroad tracks.

22. Robbins remained on the sidewalk and filmed Officer 243 as she exited her vehicle and approached an officer in a Des Moines Police polo standing on the sidewalk just to the south of Robbins.

23. Officer 243 whispered to the other officer that Robbins was filming them, and then, after a few inaudible comments, Officer 243 returned to her patrol vehicle and backed up East 2nd Street and parked her car in the fenced lot behind the Department.

24. While continuing to film, Robbins walked south on the sidewalk and behind the officer in the polo shirt who then turned and walked up East 2nd towards the Des Moines Police Department parking lot.

25. Robbins continued to stand on the west sidewalk and zoom his camera in on illegally parked cars adjacent to No Parking sign across the street.

26. At no time did Robbins ever leave the public sidewalk adjoining East 2nd Street.

27. While filming, a car approached from the north on East 2nd Street, stopped in the street parallel to him, and the driver rolled down the passenger window.

28. The driver of the sedan was Des Moines Police Detective Bradley Youngblut.



29. Youngblut leaned toward the passenger window and asked Robbins what he was doing.

30. When Robbins responded that he was simply taking pictures, Youngblut pressed further and told Robbins that he was being "a little suspicious."

31. Robbins asked Youngblut if they were in the Market District and once again Youngblut says Robbins is acting suspicious and reiterates that there are police vehicles and personal police vehicles in the area, and he is just trying to figure out what is going on.

32. "Well, are you okay now or are you still suspicious," Robbins asked, and Youngblut indicated that he was still "suspicious" because Robbins was taking pictures of police officers' personal vehicles.

33. At this point, Youngblut said that he needed to see identification and ask some questions in order to remove his suspicions.

34. When Robbins wondered how this procedure would alleviate the detective's concern, Youngblut bristled and said that he was just asking and did not "understand the

difficulty here" because clearly it was strange for someone to back here taking pictures of police vehicles

35. Youngblut bristled even harder when Robbins asked the detective if what he was doing was "legal."

36. Youngblut leaned a little closer to the passenger side window and told Robbins, "you're one of those folks, aren't ya, one of those folks that has to challenge everything?"

37. The two went back and forth with Robbins continuing to ask how his conduct was illegal when he was standing on a public sidewalk and Youngblut continuing to insist that regardless of the sidewalk, Robbins' filming was suspicious.

38. After again asking him to identify himself, Youngblut was joined at the scene by Sergeant Christopher Curtis and other Des Moines police officers who huddled around Robbins in an intimidating semi-circle.

39. Curtis, dressed in plain clothes, wearing dark sunglasses, and a baseball cap, stood directly next to Robbins and asked him what was "going on?"



40.     Des Moines Police Lieutenant Joseph Leo stood directly behind Curtis and was dressed in his uniform.

41.     Robbins turned to Curtis and Leo and said, "Hi," and, "you tell me what's going on?"

42.     "I don't know," Leo said, and Robbins indicated that he'd been accosted and confronted by Youngblut.

43.     Youngblut got out of his sedan and physically approached Robbins.

44.     Youngblut reiterated that Robbins was taking pictures of unmarked police vehicles, including, he asserted, pictures of license plates.

45.     Youngblut further asserted that several police vehicles were stolen from the area and that's why Robbins activity was suspicious.

46.     Robbins asked what it would take to alleviate the officers' suspicions, and Youngblut once again said an explanation of what and why he was taking pictures.

47.     "I'm taking pictures because it is perfectly legal for me to be taking pictures," Robbins said, and Youngblut responded that just because it was legal activity didn't mean it also wasn't "suspicious activity."

48.     When Robbins again asked what it would take, Youngblut snipped that, just for the record, "your responses are what makes me feel more suspicious."

49.     At this point, Leo grabbed Robbins left wrist and forced Robbins' arm over his head.

50.     Robbins told Leo and the other Officers that he did not consent to the touching.

51.     Curtis then asked what was in Robbins pocket and Robbins told the officers that he would not consent to any searches.

52.     "I don't need consent when there is suspicious activity," Curtis told Robbins.

9

53. The officers then groped Robbins and rifled through his pockets without his consent.

54. After he asked Curtis to identify himself and Curtis complied, Robbins asserted once again that he was not doing anything illegal.

55. Curtis said that Robbins was not doing anything illegal but that he was acting suspicious, refused to identify himself, and that he had been looking in cars.

56. "In cars," Robbins questioned? "Well, at cars," Curtis said.

57. As Robbins was responding, Leo shushed him, said, "I'm talking now and why don't you have any ID on you".

58. "Why do I need ID to be a pedestrian," Robbins said, and Leo then asked Robbins for his name.

59. "What is your name," Robbins responded, and when Leo told him, Robbins said, "Well, Lt. Leo, I don't need to give you my name."

60. "Okay," Leo said, and another officer out of the view of Robbins's camera indicates that Robbins does in fact have to identify himself.

61. "What crime have I committed," Robbins said, and Youngblut said again it was "suspicious" for Robbins to be back there.

62. "That's the crime," Robbins exclaims. "Is that a felony or a misdemeanor and where in the code is suspicion a crime?"

63. Youngblut was incensed, and asked Robbins who crossed him that he had to act this way when the officers were just asking him simple questions because you are taking pictures of unmarked and undercover police vehicles.

64. "Cite me a code section," Robbins said, and Youngblut asked him what organization he was helping that would make him this difficult. "What is this issue with you," Youngblut said.

10

65. Curtis jumped in and told the officers that Robbins was just "an angry little guy" and he told Robbins to "go away."

66. Robbins said "no," and Curtis told him that he was not allowed out "in front of the building."

67. When Robbins asserted that it was a public sidewalk, Curtis told him to "move on down the sidewalk then."

68. Robbins asked if he "was free to go." Curtis said he was and Robbins said, "well then I am free to stay as well" and Curtis said, "so are we."

69. An unnerved Leo said, actually, "you are not free to go because you are loitering."

70. Robbins questioned Leo what loitering requires, what his training was, and at that point Leo said that if he did not give the officers his name, he was going to be arrested.

71. For loitering, Robbins asked, and Curtis said, "we can create a suspicious activity case and we can confiscate your camera until we have a reason."

72. "Get his information" an unnamed officer said, and Robbins asked if they were demanding his information "under the threat of arrest."

73. "Yes, you are suspicious and you are loitering and we have had cars stolen out of this lot," and unnamed officer said.

74. "Am I detained at this point," Robbins asked, and the officers said "yes" and asked him if he had his ID on him.

75. Robbins indicated he did not have his ID on him, and the officer told him to put his hands on the bed of a pick-up truck so they could pat him down.

76. An unnamed officer seized Robbins camera and shut off the running recording.

77. The officers continued to detain Robbins for several more minutes after patting him down and searching all of his pockets.

78. The officers seized Robbins cell phone, a Samsung Galaxy, and his camera, a Canon PowerShot SX530 HS. Both items contained SD memory cards.


Canon SX530 HS.jpg


Lexar 32GB Professional UHS-I SDHC.jpg



samsung 128gb micro sd card.jpg


Samsung Galaxy Core Prime SM-G360 8GB.jpg

79. Eventually, after detaining him, questioning him, searching him and seizing the above items, Youngblut, Curtis, Leo and the other officers let Robbins go without citing or arresting him, advised Robbins that he was trespassed from 25 East 1st Street (PD HQ main address).

80. In fact, Robbins had committed no crime that afternoon by standing on a public sidewalk or street adjacent to Des Moines Police Station and filming or taking pictures and no crime by questioning the officers as they were detaining him.

81. Furthermore, Defendant City of Des Moines had no policy, written or otherwise, and provided no training to Defendant officers of the right of citizens to record police officers discharging their public duties.

82. Defendant City of Des Moines also provided no training that questioning, detaining, searching and seizing Plaintiff and his property for exercising that constitutional right constituted retaliation in violation of the First Amendment.

## CAUSES OF ACTION

### Count I
### First Amendment (42 U.S.C. § 1983)
### (First Amendment Right to Be Free From Retaliation for Expressive Conduct)
### Plaintiff v. All Defendants

83. Plaintiff incorporates by reference the allegations of the preceding paragraphs as though set forth at length herein.

84. Observing and recording public police activities, without interfering with those duties, is a legitimate means of gathering information for public dissemination and is therefore expressive conduct protected by the First Amendment to the United States Constitution.

85. The detention, search, and seizure of Plaintiff and his property constituted unlawful retaliation by Defendants for Plaintiff's engaging in activity protected by the First Amendment to the U.S. Constitution.

86. The detention, search, and seizure of Plaintiff and his property also constituted unlawful retaliation by Defendant for Plaintiff questioning them and their lawful authority, which is activity protected by the First Amendment to the U.S. Constitution.

87.     Additionally, Defendants acted with wanton, callous and reckless disregard of Plaintiff's First Amendment rights in detaining, searching Plaintiff and seizing Plaintiff's property in retaliation for exercise of these constitutionally protected rights.

### Count II
### Fourth Amendment (42 U.S.C. § 1983)
### (False Arrest-Seizure)
### Plaintiff v. All Defendants

88.     Plaintiff incorporates by reference the allegations in the paragraphs above as if thoroughly set forth here.

89.     The actions of the Defendants in detaining, searching, and seizing Plaintiff and his property without probable cause violated Robbins' clearly established right to be free from a false arrest/seizure under the Fourth Amendment to the United States Constitution.

### Count III
### Monell Claim - Failure to Train
### Plaintiff v. Defendant City of Des Moines

90.     Plaintiff incorporates by reference the allegations in the paragraphs above as if thoroughly set forth here.

91.     Defendant City of Des Moines was deliberately indifferent when it failed to properly train Defendant Officers that Plaintiff has a First Amendment right to stand in a public forum and record police officers discharging their public duties.

92.     Without the City of Des Moines' deliberate indifference for failing to have a proper policy and to properly train Defendant officers, Robbins would not have suffered the retaliatory detention, search and seizure at the hands of City of Des Moines employees and would not have been injured as a result.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests:

   a. Compensatory damages;

   b. Punitive damages;

   c. Reasonable attorney's fees and costs; and

   d. Such other and further relief as may appear just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a jury trial as to all claims stated in this Complaint.

Wednesday, September 05, 2018

Respectfully submitted,

*s/Glen S. Downey*
Glen S. Downey                           AT0012428

*s/Nathan A. Mundy*
Nathan A. Mundy                          AT0009065

DOWNEY & MUNDY LAW OFFICES, PLLC
317 6th Avenue, Suite 1300
Des Moines, IA, 50309
515-288-1552
glen@downeymundy.com
nathan@downeymundy.com

*s/Gary Dickey*
Gary Dickey                              AT0001999

DICKEY & CAMPBELL LAW FIRM, P.L.C.
301 East Walnut Street, Suite 1
Des Moines, IA, 50309
515-288-5008
gary@dickeycampbell.com

*Attorneys for Daniel Thomas Robbins*