IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| DANIEL THOMAS ROBBINS,<br>    Plaintiff,<br>v.<br><br>THE CITY OF DES MOINES, IOWA, Des Moines Police Detective BRAD YOUNGBLUT, Des Moines Police Lieutenant JOSEPH LEO, and Des Moines Police Sergeant CHRISTOPHER CURTIS,<br>    Defendants. | Case No. 4:18-CV-289<br><br>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

## TABLE OF CONTENTS

I.    SUMMARY OF ARGUMENT .........................................................................2

II.   STATEMENT OF FACTS .............................................................................2

III.  SUMMARY JUDGMENT STANDARD ........................................................2

IV.   ARGUMENT ...............................................................................................3

      A.  All Defendants Officers, Sued in Their Individual Capacities, are
          Entitled to Qualified Immunity for to the Fourth Amendment Claims .......3

      B.  All Defendants Officers, Sued in Their Individual Capacities, are
          Entitled to Qualified Immunity for the First Amendment Retaliation
          Claim...................................................................................................12

      C.  Due to the Qualified Immunity of the Officers, The City of Des Moines
          (and Any Officers Named in Their Official Capacity) Are Not Liable
          Under a Monell Claim ..........................................................................16

V.    CONCLUSION...........................................................................................17

## I.      SUMMARY OF ARGUMENT

As directed by the Court, this Motion for Summary Judgment and supportive documents addresses only the matter of qualified immunity for the named Defendants. As set forth below, all Defendants are entitled to summary judgment because their conduct consisting of briefly retaining Mr. Robbins and briefly seizing his camera and cell phone did not violate a clearly established constitutional or statutory right of which a reasonable person would have known.

## II.     STATEMENT OF FACTS

The City of Des Moines, Brad Youngblut, Joseph Leo, and Christopher Curtis adopt the Statement of Undisputed Material Facts ("SUMF") filed contemporaneously herewith and will not set forth a separate statement of the facts in this brief, except where necessary to make argument.

## III.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment is warranted where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the Defendants are entitled to a judgment as a matter of law.  Summary judgment is appropriate if the record, viewed in the light most favorable to the nonmoving party, reveals no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Woods v. Daimler Chrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). While the movant bears the initial responsibility of informing the district court of the basis for its motion and must identify the undisputed material facts of record, the non-moving party must do more than simply show there is some metaphysical doubt as to the material facts. *Baldwin,* 333 F.Supp. 3d at 833 (citing *Torgerson v. City of Rochester,* 643 F.3d

1031, 1042 (8th Cir. 2011)(*en banc*) internal citations omitted), "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986).

Summary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute. *Peters*, 979 F. Supp. at 926 (citing *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011) (*en banc*)). In describing how to approach a motion for summary judgment, the Eighth Circuit has observed that the "substantive law determines which facts are relevant and which are immaterial. Only disputes that might affect the outcome will properly preclude summary judgment. *Krueger v. Fuhr,* 991 F.2d 435, 438 (8th Cir. 1993) (all internal citations omitted).

## IV. ARGUMENT

### A. All Defendants Officers, Sued in Their Individual Capacities, are Entitled to Qualified Immunity for to the Fourth Amendment Claims.

"Qualified immunity shields government officials from suit unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Yowell v. Combs*, 89 F.3d 542, 544 (8th Cir. 1996). "What this means in practice is that 'whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the "objective legal reasonableness" of the action, assessed in light of the legal rules that were "clearly established" at the time it was taken.'" *Wilson v. Layne*, 526 U.S. 603, 614 (1999) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). The applicable standard in such cases is viewed from the totality of the circumstances and judged from the viewpoint of a reasonable officer -- irrespective of the officer's underlying intent or motivation. Qualified immunity is an immunity from suit rather than a mere defense to liability…

it is effectively lost if a case is erroneously permitted to go to trial. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

As the Eighth Circuit has noted, "[t]he Supreme Court has generously construed qualified immunity to shield 'all but the plainly incompetent or those who knowingly violate the law.'" *Littrell v. Franklin*, 388 F.3d 578, 582 (8th Cir. 2004) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Littrell*, 388 F.3d at 582. To overcome qualified immunity inquiry, Robbins must establish that defendants were "intentional or reckless, thereby shocking the conscience." *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 672 (8th Cir. 2007) (citing *Wilson v. Lawrence County, Mo.*, 260 F.3d 946, 955-56 (8th Cir. 2001)). Mere negligence will not suffice. *Id.*

Courts use a two-part test when determining whether a lawsuit against an official may proceed under a qualified immunity assertion. First, the court must determine whether, "taken in the light most favorable to the party asserting the injury… the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, the court must determine whether the right in question was "clearly established." *Id*. For the right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right." *Buckley v. Rogerson*, 133 F. 3d 1125, 1128 (8th Cir. 1998). As a consequence, a plaintiff is required to "point to closely analogous cases" or show that the right is "so clear that no one thought it worthwhile to litigate the issue." *Marcavage v. City of Chicago*, 635 F. Supp.2d 829, (N.D. Ill 2009), citing *Dunn v. City of Elgin*, 347 F.3d 641, 650 (8th Cir. 2003). "If either question is answered in the negative, the public official is entitled to qualified immunity." *Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007) (quoting *Vaughn v. Ruoff*,

253 F.3d 1124, 1128 (8th Cir. 2001)). *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).  Both of these questions are answered in the negative for the reasons set forth below.

### 1.  Defendants Have Qualified Immunity For the Detention of Mr. Robbins

As a threshold matter, Robbins was not arrested; he was subjected to an investigatory or *Terry* stop, well within the meaning *Terry v. Ohio,* 392 U.S. 1 (1968). Under *Terry a*nd its progeny, it is well-settled that:

> The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, guarantees that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV; *Payton v. New York*, 445 U.S. 573, 576 (1980). An investigatory stop is considered a seizure within the meaning of the Fourth Amendment and must be "supported by reasonable suspicion to believe that criminal activity may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). A reviewing court must "look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Id*. In forming a basis for suspicion, officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id*. While "an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id*. at 274.

*U.S. v. Ameling*, 328 F.3d 443, 447 (8th Cir. 2003) (internal quotation marks omitted). "The determination of whether probable cause existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time, and the same is true for reasonable suspicion." *U.S. v. Sanchez*, 572 F.3d 475, 478 (8th Cir. 2009) (citing *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir.1999) (addressing this notion in the context of probable cause)). "But the objective *Terry* standard does not require that an officer have verbalized all the

5

reasons "justifying the search articulately, only that such reasons be articulable." *United States v. Binion*, 570 F.3d 1034, 1041 (8th Cir. 2009) (citation omitted).

In this case, Mr. Robbins was photographing the personal vehicles of several officers in an area that had been the site of vehicle thefts and vandalism. He wasn't photographing officers carrying out their duties; he was gathering data about them coming and going from their personal or official vehicles. [SUMF 16, 10]. As to the first question of qualified immunity, it is unclear if Robbins has a constitutional right to do this. Courts are currently split on whether there is a constitutional right to video or photograph officers in the course of their duties. The United States Supreme Court has yet to determine if photographing of filming an officer is protected under the First Amendment. In terms of the split in the districts, the 1st, 5th, 9th, 11th Circuits have found there is some right to record police activity *while engaging in their duties*. *Gericke v. Begin*, 753 F.3d 1, 7 (1st Cir. 2014), *Turner v. Driver*, 848 F.3d 679 (5th Cir. 2017), *Fordyce v. Seattl*, 55 F.3d 436, 439 (9th Cir. 1995), *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir.).

This is not the situation in the present case. Robbins was filming officers coming and going from the station and getting into their personal vehicles. That is not a circumstance that has been addressed even in the courts that have articulated a constitutional right to film officers while performing their duties. Indeed, in the *Turner v. Driver* case, the court found the officers had reasonable suspicion to detain a man for filming the routine comings and goings of officers due to safety concerns that officers may have—just as was articulated in this case. 848 F.3d 679 (5th Cir. 2017). Specifically, the court stated, "An objectively reasonable person in [the officers'] position could have suspected that Turner was casing the station of an attack, stalking an officer, or otherwise preparing for criminal activity, and thus could have found Turner filming of the "routine activities" of the station sufficiently suspicious to warrant questioning and a brief detention."

*Turner,* 848 F.3rd at 692. Otherwise stated, even if one has a constitutional right to video law enforcement, it may still rise to the level of reasonably suspicious behavior given the context and totality of the circumstances.

In many circuits, the right doesn't exist because the courts hasn't passed on the issue. That appears to be the case in the 8th Circuit. Hence, the City's and the officers' argument as to the first prong is that there isn't a constitutional right to film police officers traversing between their vehicles and the stations.

However, even if there is, there was not a violation of that right when it amounts to suspicious activity that triggers a *Terry* stop, as was the case here. Otherwise stated, there is no right to avoid being briefly detained and questioned under these circumstances. Detective Youngblut explained to Mr. Robbins that there had been car thefts and vandalism back there. [SUMF 27]. He mentioned concerns over officer safety and that he is observing officers' movements. [SUMF 80]. All of this was articulated to Mr. Robbins and in return, he was uncooperative and evasive. He refused to provide a legitimate or "expressive" purpose for monitoring police activities. [SUMF 80]. What was not articulated to Mr. Robbins is the awareness of Detective Youngblut about previous stalking-type activities very similar, taking videos and monitoring activities of officers, that lead to the murder of a Des Moines Police Department Officer, Anthony Beminio and an Urbandale Police Officer, Justin Martin. [SUMF 89-90].

As to the second prong of the qualified immunity analysis, if it is difficult to find a constitutional right even exists, then it is axiomatic that it is not a clearly established right. There is a split among circuits. As noted above, the 1st, 5th, 9th, 11th Circuits have found there is some right to record police activity *while engaging in their duties. Gericke v. Begin*, 753 F.3d 1, 7 (1st Cir. 2014), *Turner v. Driver*, 848 F.3d 679 (5th Cir. 2017), *Fordyce v. Seattl*, 55 F.3d 436, 439 (9th

Cir. 1995), *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir.). Other circuits are silent. The United States Supreme Court has not taken a position on this question. Some courts have taken a position that there isn't a blanket constitutional right to film police officer when there is no apparent expressive purpose, and the expressive purpose must be known to the officers. *Fields v. City of Philadelphia*, 166 F.Supp.3d 528, 535, 537 (E.D. Pa. 2016).

That leads to an important principle that the United States Supreme Court has consistently required that qualified immunity analysis goes beyond generalized constitutional rights when dealing with the "clearly established" prong.

> The Court of Appeals also found clearly established law lurking in the broad "history and purposes of the Fourth Amendment." We have repeatedly told courts—and the Ninth Circuit in particular, not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search and seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established. [internal citations omitted]

*Ashcroft v. Al-Kidd*, 563 U.S. 731, 732 (2011).

So, the question has to be whether there is clearly established law that an individual has a right to take photographs and monitoring the movements of police officers as they travel between their personal and official vehicles to the police station. There is not. That right has not been clearly established in any circuit and there certainly isn't agreement about whether officers can be filmed in performing their duties. "Where no controlling authority specifically prohibits a defendant's conduct, and when the federal courts are split on the issue, the law cannot be said to be clearly established." *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011).

Since the circumstances to not present a constitutional right, nor a clearly defined constitutional right, the Defendants are entitled to qualified immunity.

### 2. Defendants Have Qualified Immunity For the Seizure of Mr. Robbins Camera and Phone.

As noted above, the applicable standard in such cases is viewed from the totality of the circumstances and judged from the viewpoint of a reasonable officer -- irrespective of the officer's underlying intent or motivation.  As the Eighth Circuit has noted, "[t]he Supreme Court has generously construed qualified immunity to shield 'all but the plainly incompetent or those who knowingly violate the law.'" *Littrell v. Franklin*, 388 F.3d 578, 582 (8th Cir. 2004) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

First, the court must determine whether, "taken in the light most favorable to the party asserting the injury… the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, the court must determine whether the right in question was "clearly established." *Id.* For the right to be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right." *Buckley v. Rogerson*, 133 F. 3d 1125, 1128 (8th Cir. 1998). As a consequence, a plaintiff is required to "point to closely analogous cases" or show that the right is "so clear that no one thought it worthwhile to litigate the issue." *Marcavage v. City of Chicago*, 635 F. Supp.2d 829, (N.D. Ill 2009), citing *Dunn v. City of Elgin*, 347 F.3d 641, 650 (8th Cir. 2003). "If either question is answered in the negative, the public official is entitled to qualified immunity." *Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007) (quoting *Vaughn v. Ruoff*, 253 F.3d 1124, 1128 (8th Cir. 2001)). *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

Starting with Mr. Robbins's brief detention, there was reasonable suspicion to justify the short investigatory stop.[1] It was Mr. Robbins' behavior after that time that created probable cause

---

[1] The entire interaction between officers and Mr. Robbins lasted approximately 14 minutes, however, he was not detained the entire time. In fact, at one point he asked if he was free to leave

to seize the camera. He was uncooperative from the beginning of the encounter. He would not explain why he was filming the movements of officers. He would not explain why he was filming the personal and professional vehicles of officers. When told there had been thefts and vandalism of vehicles in the area, he did not provide any explanation of why he was there. When told there were concerns about officer safety and undercover vehicles, Robbins remained argumentative, but provided nothing to allay suspicion. To the contrary, his evasiveness heightened suspicion, as stated by Detective Youngblut. [SUMF 87].

These kinds of behaviors can bring a situation from reasonable suspicion to probable cause, and that is what happened here. Recently, the Eighth Circuit indicated that an individual's refusal to answer questions or give his identification justified going from a *Terry* stop to an arrest. *Waters v. Madson*, 17-3827 (8th Cir. April 11, 2019). With Mr. Robbins, considering the suspicious activity plus his demonstrated hostility to the officers, this caused heightened concern for Youngblut who had investigated a similar situation that resulted in the ambush-style deaths of two officers.

In looking at these particular set of circumstances in light of qualified immunity, there is no constitutional right to avoid seizure of recording devices, and there is no clearly established right to avoid seizure of recording devices when a person is acting suspiciously and then refuses to explain why he is taking photographs of officer movements and their personal and official vehicles.

---

and was told yes. He chose to stay at that point. Det. Youngblut advised him he was detained at Youngblut Body Cam 4:30 and told him he was free to go at Youngblut Body Cam 12:52, so he length of detention is approximately 8 minutes, 22 seconds. By that time, Mr. Robbins had displayed evasive behavior by refusing to answer questions. "Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *United States v. Brignoni—Ponce,* 422 U.S. 873, 885 (1975).

"Probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be …useful as evidence of a crime; it does not require a showing that a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983)[internal citations omitted].

Vehicles were stolen from the police lot. Vehicles were vandalized in the police lot. These officers found a person photographing police vehicles, both personal and official, in this lot and refused to provide any explanation for doing so. A reasonable officer, under the totality of the circumstances, would believe he had probable cause to seize this camera to investigate whether Mr. Robbins was engaged in criminal activity related to vehicles.

Police officers all over the country are seeing a rise in targeted attacks on law enforcement.[2] According to the National Law Enforcement Officers Memorial Fund, "Firearms-related fatalities were the leading cause of deaths, with 52 officers shot and killed in 2018. That's a rise from 2017, when guns were involved in 46 officer deaths". Des Moines Police Officer Tony Beminio and Urbandale Officer Justin Martin were murdered and Bradley Youngblut was the lead investigator in that case. The suspect of that investigation had a history of filming police officers and his interactions with them and posting them online. [SUMF 89]. He also utilized his knowledge of the activities of the Urbandale Police Department in an effort to lure an officer into the ambush he committed upon Officer Justin Martin. [SUMF 89]. Utilizing his own personal knowledge and experience with the officers, the suspect explained to Youngblut that this was how he was able to create the situation resulting in the death of Officer Martin and leading to the death of Sergeant Beminio. [SUMF 89]. So, when seeing an individual displaying similar

---

[2] "Ambush Killings of Police Officers Has Hit a 10-year High" Washington Post, November 21, 2016.

behavior of monitoring officers' movements and vehicles, paired with the evasiveness and refusal to cooperate on any level, a reasonable officer, under the totality of the circumstances, would believe he had probable cause to seize this camera to investigate whether Mr. Robbins was engaged in criminal activity related to police officers. There is no clearly established right to avoid seizure of the camera and phone in this particularized situation. The officers are entitled to qualified immunity.

    B.  <u>All Defendants Officers, Sued in Their Individual Capacities, are Entitled to Qualified Immunity for the First Amendment Retaliation Claim.</u>

Robbins argues that Curtis, Leo, and Youngblut violated his First Amendment rights in detaining him and seizing his camera and phone. The First Amendment "prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "To prevail on a First Amendment retaliation claim, the plaintiff must show that he engaged in protected activity, that the defendants' actions caused an injury to the plaintiffs that would chill a person of ordinary firmness from continuing to engage in the activity, and that a causal connection exists between the retaliatory animus and the injury." *Bernini v. City of St. Paul*, 665 F.3d 997, 1007 (8th Cir. 2012).

The federal courts have yet to create a uniform approach to addressing First Amendment retaliation allegations. When the question is about an arrest or prosecution, most jurisdictions inquire whether there was probable cause; so long as there was probable cause, any purported impermissible motive is overcome. *Mozzochi v. Borden*, 959 F.2d 1174, 1180 (2d Cir. 1992). That is the approach in the Eighth Circuit.  "[A] retaliatory motive on the part of an official urging prosecution combined with an absence of probable cause supporting the prosecutor's decision to go forward are reasonable grounds to suspend the presumption of regularity behind

the charging decision." *Small v. McCrystal*, 708 F.3d 997, 1008 (8th Cir. 2013), *citing Hartman,* 547 U.S. at 265. In sum, the Plaintiff must show that the Defendants had an impermissible motive and he must plead and prove the absence of probable cause. *Hartman*, 547 U.S. at 265. Presumably, in terms of the stop, following this model, one would have to prove absence of reasonable suspicion.

It is important to note, that some courts, including the Eighth Circuit, have ruled that seizure claims made in the context of the First Amendment must be analyzed under Fourth Amendment framework.

> As the district court properly recognized, the Supreme Court in *Graham v. Connor*, 490 U.S. 386, 394 (1989) established that excessive force claims arising in the context of an arrest are 'most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right to be secure in their persons against unreasonable seizures of the person.' Having reviewed the record in full, we agree that the conduct at issue plainly implicates the protections of the Fourth Amendment and that no cognizable § 1983 First Amendment claim has been asserted.

*Anderson v. Franklin Cty*., Mo., 192 F.3d 1125, 1132 (8th Cir. 1999).

To the extent this Court is in agreement that a Fourth Amendment analysis is necessary with regard to the seizure portion of this argument, the undersigned references back to section IV.A. *supra*. Likewise, since, traditional qualified immunity arguments are also available in the context of First Amendment claims, they would be identical to those set forth in IV.A. above, as well. Since there is arguably no constitutional right to photograph and monitor the movements of law enforcement as they walk to a from the station to their personal and official vehicles, and even if there is that right, it hasn't been clearly established, the officers are entitled to qualified immunity for the First Amendment claims.

If the matter turns on the issue of reasonable suspicion for the *Terry* stop, as was stated in and probable cause for seizing the camera and phone, any purported impermissible motive is overcome. *Mozzochi*, 959 F.2d at 1180. As was stated in the *Turner* case, "An objectively reasonable person in [the officers'] position could have suspected that Turner was casing the station of an attack, stalking an officer, or otherwise preparing for criminal activity, and thus could have found Turner filming of the "routine activities" of the station sufficiently suspicious to warrant questioning and a brief detention." *Turner v. Driver*, 848 F.3d 679, 692 (5th Cir. 2017). Similarly, the Des Moines officers involved here continually asked Mr. Robbins what he was doing. He refused to provide any explanation. He was told that there had been thefts and vandalism officers' vehicles. He remained evasive. He was told there are safety issues involved, especially if he is photographing undercover vehicles. He provided no reason, not to mention an expressive reason, for his behavior. Bradley Youngblut was aware of similar behavior of monitoring police activity that resulted in the deaths of officers. He was aware of violent attacks on the police station. In light of all those circumstances, there was reasonable suspicion for the stop, hence, there is no First Amendment violation. *Small v. McCrystal*, 708 F.3d 997, 1008 (8th Cir. 2013) .

Once Robbins refused to answer questions about his purpose in photographing vehicles and tracking the movements of officers, the officers had probable cause to seize his camera. An individual's refusal to answer questions or give his identification can move an encounter from reasonable suspicion to probable cause. *Waters v. Madson*, 17-3827 (8th Cir. April 11, 2019). As noted above, "Probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief that certain

items may be …useful as evidence of a crime; it does not require a showing that a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983).

Vehicles were stolen from the police lot. Vehicles were vandalized in the police lot. These officers found a person photographing police vehicles, both personal and official, in this lot and refused to provide any explanation for doing so. A reasonable officer, under the totality of the circumstances, would believe he had probable cause to seize this camera to investigate whether Mr. Robbins was engaged in criminal activity related to vehicles.

Police officers all over the country are seeing a rise in targeted attacks on law enforcement.[3] According to the National Law Enforcement Officers Memorial Fund, "Firearms-related fatalities were the leading cause of deaths, with 52 officers shot and killed in 2018. That's a rise from 2017, when guns were involved in 46 officer deaths". Des Moines Police Officer Tony Beminio and Urbandale Officer Justin Martin were murdered and Bradley Youngblut was the lead investigator in that case. The suspect of that investigation had a history of filming police officers and his interactions with them and posting them online.  [SUMF 89]. He also utilized his knowledge of the activities of the Urbandale Police Department in an effort to lure an officer into the ambush he committed upon Officer Justin Martin.  [SUMF 89]. Utilizing his own personal knowledge and experience with the officers, the suspect explained to Youngblut that this was how he was able to create the situation resulting in the death of Officer Martin and leading to the death of Sergeant Beminio. [SUMF 89]. So, when seeing an individual displaying similar behavior of monitoring officers' movements and vehicles, paired with the evasiveness and refusal to cooperate on any level, a reasonable officer, under the totality of the circumstances, would believe he had probable cause to seize this camera to investigate whether Mr. Robbins

---

[3] "Ambush Killings of Police Officers Has Hit a 10-year High" Washington Post, November 21, 2016.

was engaged in criminal activity related to police officers. Since probable cause was present, there is no First Amendment violation. *Small v. McCrystal*, 708 F.3d 997, 1008 (8th Cir. 2013).

C.  Due to the Qualified Immunity of the Officers, The City of Des Moines (and Any Officers Named in Their Official Capacity) Are Not Liable Under a Monell Claim.

Count II of Robbins petition asserts a claim against the City of Des Moines for "Failure to Train." A municipality may be liable under § 1983 where "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dept. of Social Serv. Of Cty of New York*, 436 U.S. 658, 691. A municipality, however, cannot be held liable solely because it employs a tortfeasor. *Id.* Liability may be imposed upon a municipality if it acts or has a policy that "itself violates federal law, or directs an employee to do so." The City of Des Moines does not have a policy that does this. To the contrary, the City of Des Moines has policies that specifically direct officers to observe the constitutional rights of individuals they encounter. [SUMF 93]. All officers, including the named officers have been trained to observe the constitutional rights of individuals. [SUMF 94].

A municipality can also be liable "where an official policy is lawful on its face and does not compel unconstitutional action" but "municipal action has led an employee to violate a plaintiff's rights," and that action was "taken with 'deliberate indifference' as to its known or obvious consequences." *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389–90 (8th Cir.2007) (en banc) (quoting in part *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397 (1997)). This is the ground that Robbins appears to asserting in his petition.

However, a municipality cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when that right has not been clearly established. *Hollingsworth v. City of St. Ann*, 800 F3d 985, 992 (8th Cir. 2015). As was argued and demonstrated above, there was no clearly established right to not be subject to a *Terry* stop when photographing police officers'

personal, official and undercover vehicles, as well as the movement of police officers, in an area

that had been subject to criminal activity regarding vehicles. This is especially so given the threats

to officer safety and their lives that are present. There is also no clearly established constitutional

right to not have recording devices confiscated under the specific circumstances of the Terry stop

described above. As such, the City of Des Moines could not exhibit fault rising to the level of

deliberate indifference to a constitutional right when that right has not been clearly established. *Id*.

Summary judgment should be entered in favor of the City of Des Moines on Count III.

## CONCLUSION

For all the reasons set forth herein, the City of Des Moines, Officers Bradley Youngblut,

Joseph Leo and Christopher Curtis all respectfully request summary judgment be made in their

favor on all counts based on qualified immunity.

Respectfully Submitted,

*Michelle Mackel-Wiederanders*
Michelle Mackel-Wiederanders
Assistant City Attorney
400 Robert D. Ray Drive
Des Moines, IA  50309-1891
Telephone: (515) 283-4537
E-Mail:  MRMackel@dmgov.org

ATTORNEY FOR DEFENDANTS

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 19th day of April 2019, I electronically filed
the foregoing with the Clerk of Court using the CM/ECF system:

*/s/Michelle Mackel-Wiederanders*
Michelle Mackel-Wiederanders
Assistant City Attorney