IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

DANIEL THOMAS ROBBINS,

   Plaintiff,

vs.

               No. 4-18-CV-289-CRW-SBJ

               ORDER

THE CITY OF DES MOINES, IOWA;
Des Moines Police Detective BRAD
YOUNGBLUT; Des Moines Police
Lieutenant JOSEPH LEO; and Des Moines
Police Sergeant CHRISTOPHER CURTIS,

   Defendants.

   In this action brought pursuant to 42 U.S.C. section 1983, plaintiff Daniel Robbins (Robbins) alleges the defendant City of Des Moines, Iowa (City) and three of its police officers violated rights protected by the First and Fourth Amendments to the United States Constitution and that the City failed to train the officers properly. Defendants have moved for summary judgment (Docket #12), asserting that they are immune from all claims against them. On May 29, 2019, the court held a hearing on the resisted motion by telephone conference call and now grants the motion.

   <u>Summary Judgment Standard</u>. The court applies the familiar summary judgment standard. Summary judgment is an appropriate disposition when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56. A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. <u>Zubrod v. Hoch</u>, 907 F.3d 568, 575 (8th Cir. 2018). The parties seeking summary judgment bear the initial burden of demonstrating the absence of a genuine issue of

1

fact for trial. Robinson v. White County, Ark., 452 F.3d 706, 714 (8th Cir. 2006). Once the moving parties satisfy their initial burden, the nonmoving party must go beyond the pleadings and, by his own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In resisting the motion for summary judgment, plaintiff has not demonstrated in this record that any material fact questions exist.

Undisputed Facts.

1. On May 10, 2018, Detective Brad Youngblut (Youngblut) was leaving the police station to walk to his car.

2. Youngblut observed Robbins filming or taking photographs of several vehicles parked on the west side of the station and of officers and civilian employees entering and leaving it.

3. Youngblut was parked in an adjacent lot and remained in his vehicle observing Robbins for several minutes. In the immediate vicinity were personal vehicles of officers, official police vehicles, seized vehicles from criminal activity, and undercover vehicles.

4. It appeared to Youngblut that Robbins was monitoring activity around the station, including the movement of officers and their vehicles.

5. Youngblut pulled up alongside Robbins and asked what he was doing. Robbins refused to answer.

6. Youngblut saw officers approaching Robbins. Youngblut exited his vehicle and activated his body camera.

7. Lieutenant Joseph Leo (Leo) approached Robbins and asked, "What's going on?"

8. Youngblut called Robbins's activity suspicious. Robbins asked "What would it take to ease your suspicions?" Youngblut asked Robbins to explain why and what he was photographing. Robbins said, "I'm taking pictures because it's perfectly legal for me to do so."

9. Leo asked Robbins for some identification. Robbins said he had none.

10. Youngblut said, "Sir, just so you understand, your responses are what makes me even more suspicious, because you're immediately difficult."

11. Leo touched Robbins's shirt and moved closer to pat him. Robbins said, "Don't touch me."

12. Leo asked Robbins what was in his pocket. Leo placed his right hand on Robbins's right upper arm and lifted Robbins's left arm overhead while lifting the shirt. Robbins said he did not consent to anything.

13. Sergeant Christopher Curtis (Curtis) discussed the suspiciousness of Robbins's behavior with Robbins. The officers at the scene discussed what behavior they had witnessed and whether Robbins had to give them his name.

14. Robbins asked what crime he had committed.

15. Youngblut asked in what organization Robbins was involved. Curtis advised Robbins he was not allowed in front of the station. Robbins indicated that it was a public sidewalk. Curtis told Robbins to "move down on the sidewalk, down the road."

16. Robbins asked, "Are you releasing me? Am I free to go?" Curtis stated, "Yep. Okay."

17. Robbins remained at the same location. He stated, "Okay then, I'm free to stay as well." Curtis said, "So are we."

18. An officer stated that Robbins was loitering. Robbins denied that he was loitering and stated that he was doing nothing wrong. Robbins asked for the officer's name and the name of the police academy the officer attended. The officer said that Robbins was loitering and would be arrested if he did not provide information.

19. Youngblut said he could confiscate the camera and again asked Robbins for information. Robbins asked, "Am I detained at this point?" Youngblut said, "Yes." Officers asked Robbins for identification and searched his person. Robbins eventually stated that his name was "John Doe."

20. An officer told Robbins it was his last chance to provide information. Robbins provided his last name, stating that he was doing so under threat of arrest. Youngblut said, "Absolutely. I understand that. First name." Then Robbins stated his first name.

21. Robbins stated that he was being held against his will.

22. An officer said Robbins should check the law on trespass and loitering before coming to the station.

23. Officers discussed whether to confiscate the camera. Robbins asked if they had a warrant. Youngblut said, "No, I'm going to confiscate it for suspicious activity." Robbins asked if the camera had been involved in a crime. Youngblut said, "I've got to investigate it." Robbins gave Youngblut his address. Youngblut stated that he would return the camera once he got a search warrant and downloaded the information from the camera. He told Robbins to "make arrangements" if he had reason to come to the police station.

24. Youngblut asked if Robbins understood "why you were detained? Do you understand why I'm taking your camera at this point in time and what will be coming in the

future?"

25. Robbins said, "I'm under no obligation to respond to that." Youngblut also confiscated Robbins's cell phone and provided Robbins with information about filing a complaint. Robbins asked, "Have you completed your stop?" Youngblut said, "Yes. You're free to go."

26. The police department returned the camera and cell phone to Robbins on or after May 16, 2018.

Application of Law to Facts. Defendants argue summary judgment is appropriate on the complaint's Counts I (First Amendment violation) and II (Fourth Amendment violation) because they are entitled to qualified immunity. "Qualified immunity shields government officials from suit unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." Yowell v. Combs, 89 F.3d 542, 544 (8th Cir. 1996). On summary judgment, the court applies a three-part inquiry to claims of qualified immunity, considering 1) whether the plaintiff has asserted a violation of a constitutional or statutory right, 2) if so, whether that right was clearly established at the time of the violation, and 3) whether, viewing the facts in the light most favorable to the plaintiff, there are genuine issues of material fact as to whether a reasonable official would have known that the alleged action violated that right. Hunter v. Namanny, 219 F.3d 825, 829 (8th Cir. 2000).

In Count I, Robbins asserts a violation of his First Amendment right to be free from retaliation for having recorded images of public officials. Assuming *arguendo* that Count I asserts a constitutional right that was clearly established at the time of the violation, the record does not create any genuine fact dispute as to whether retaliation occurred. In order to establish a

retaliation claim, plaintiff must show that he 1) was engaged in a constitutionally protected activity, 2) the official's action caused an injury that would "chill a person of ordinary firmness from continuing...in that activity", and 3) the action was motivated in part by plaintiff's exercise of his constitutional rights. Carroll v. Pfeffer, 262 F.3d 847, 849 (8th Cir. 2001) (internal quotations omitted).

Plaintiff cites numerous authorities that classify recording police activity for the purpose of gathering information as protected First Amendment activity. Nothing in this factual record, however, supports Robbins's conclusory allegation that the officers' actions were motivated by the exercise of this constitutional right. The record establishes that Officer Youngblut approached Mr. Robbins and asked him what he was doing. Robbins refused to answer. Youngblut explained he found Robbins's behavior suspicious, but Robbins still did not provide a substantial explanation. Lacking such an explanation, it was reasonable for the officers to suspect that Robbins took the photographs for surveillance or other purposes not constitutionally protected. Nothing in this interaction could have informed Youngblut or the officers that Robbins was gathering information pursuant to his First Amendment right to publicize the photographs. Viewing the facts in the light most favorable to him, Robbins is unable to establish his claim of First Amendment retaliation. Defendants are entitled to summary judgment on Count I based on qualified immunity.

Count II asserts that defendants violated Robbins's Fourth Amendment right to be free from unwarranted search and seizure. The Fourth Amendment protects citizens from search and seizure when not "supported by reasonable suspicion to believe that criminal activity may be afoot." United States v. Arvizu, 534 U.S. 266, 273 (2002). Robbins's actions in photographing

police cars outside the station created reasonable suspicion among the officers that he was engaged in criminal activity. As described above, Officer Youngblut gave Robbins ample opportunity to allay the officers' suspicion, and Robbins declined to do so. Because the officers detained Robbins and seized his camera under reasonable suspicion of criminal activity, Robbins has failed to assert a constitutional violation. On Count II defendants are entitled to summary judgment based on qualified immunity.

Finally, in Count III Robbins asserts a Monell claim against the City of Des Moines. Monell v. Dept. of Social Serv., 436 U.S. 658, 691 (1978) established that municipalities may be vicariously liable for the actions of city officials where "action pursuant to official municipal policy of some nature caused a constitutional tort." For the reasons stated above, Robbins cannot establish that the defendants committed any constitutional tort. Further, the evidence in the record is insufficient to establish that the City of Des Moines has a "policy of inaction" allowing officers to prevent citizens from recording officers' activity. Defendants are therefore entitled to summary judgment on Count III.

Summary. The record in this case shows that on May 10, 2018, three officers stopped Daniel Thomas Robbins while he was taking photos of unmarked vehicles at the police station. The officers asked Robbins what he was doing, but Robbins did not provide an explanation. The officers then confiscated Robbins's camera and cell phone before completing the stop. Based upon this incident, Robbins filed a complaint asserting First and Fourth Amendment violations by the police officers and a Monell claim against the City of Des Moines. The officers are entitled to qualified immunity on the constitutional claims. The evidence does not establish a retaliatory motive for the stop under First Amendment jurisprudence, and the

7

officers had probable cause for the stop under the Fourth Amendment. Because Robbins cannot establish a constitutional violation by the officers, his claim against the City of Des Moines must also fail. Robbins has failed to establish any genuine dispute of material fact in this case that would justify a trial by jury. The court hereby grants defendants' motion for summary judgment and dismisses the case with prejudice.

    IT IS SO ORDERED.

    Dated this 18th day of June, 2019.

*Charles R. Wolle*

CHARLES R. WOLLE, SENIOR JUDGE
U.S. DISTRICT COURT