IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| DANIEL THOMAS ROBBINS, | ) | Case No. 4:18-cv-00289-SMR-SBJ |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER ON PLAINTIFF'S MOTION FOR |
| v. | ) | PARTIAL SUMMARY JUDGMENT AND |
| | ) | DEFENDANTS' RENEWED MOTION |
| BRAD YOUNGBLUT, in his official | ) | FOR SUMMARY JUDGMENT |
| capacity as a Des Moines Police Detective, | ) | |
| JOSEPH LEO, in his official capacity as Des | ) | |
| Moines Police Lieutenant, and | ) | |
| CHRISTOPHER CURTIS, in his official | ) | |
| capacity as Des Moines Police Sergeant, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Daniel Robbins was recording parked vehicles adjacent to the Des Moines Police Department ("DMPD") precinct when Defendants Brad Youngblut, Joseph Leo, and Christopher Curtis, all officers with the DMPD, conducted an initial investigatory stop.  Defendants questioned Robbins about his activities due to officer safety concerns.  When Robbins did not fully cooperate, Defendants stated he was acting suspiciously.  After allaying their concerns, Defendants released him.  However, they seized him again moments later when Robbins stated he wished to continue recording vehicles.  Defendants then seized Robbins's camera and cell phone without a warrant.  They released Robbins after several minutes but retained custody of the devices for twelve days.  Defendants released the devices only after Robbins's counsel requested their return through an official letter.  Robbins filed this suit a few months later.

## I.      BACKGROUND

### A.  Factual Background

On May 10, 2018, Robbins was walking near the DMPD Police Station.  He was taking photos and videos of police vehicles – many of them unmarked – that he believed were violating

parking ordinances.  [ECF No. 56-1 (Exterior East Video)].  An unnamed DMPD officer saw Robbins taking photos and videos of the cars, briefly watched him, got into her car, and then left the area.  *Id.* at 00:45.  Two minutes later, DMPD Officer Michelle Strawser ("Strawser") and Detective Michael Demoss ("Demoss") observed Robbins taking photos and videos but did not make contact with him.  *Id.* at 02:39–03:45.  One minute later, Youngblut walked past Robbins, who was taking a video of a vehicle from the sidewalk, but did not engage him.  *Id.* at 04:10.

Robbins walked away from the station a few moments later to take photographs and videos of cars at the opposite end of the street.  [ECF No. 56-1 at 05:00].  One minute later, Detective Youngblut pulled his vehicle alongside Robbins and asked Robbins to provide basic information, notably his reason for being there.  *Id.* at 05:40.  When Robbins provided uncooperative answers, Youngblut told Robbins he was being suspicious because "[w]e've had a couple cars stolen from this lot."  [ECF No. 56-5 at 01:00-02:15 (Youngblut Body Camera)].  When Robbins declined to provide more information, Youngblut explained Robbins's lack of direct answers and his decision to be "difficult" made Youngblut suspicious that criminal activity was afoot.  *Id.*

Roughly a minute later, four additional DMPD officers – some uniformed – arrived on the scene.  [ECF No. 56-6 at 00:45 (Leo Body Camera)].  Immediately after arriving, Lieutenant Leo put his hand on Robbins's left arm and forced it over his head.  [ECF No. 56-4 at 03:06 (Strawser Body Camera)].  Although the reason for this action was not stated, Leo searched Robbins's person for contraband or weapons.  *Id.*  The frisk did not find any of these items.  [ECF No. 56-6 at 02:25].

After the frisk, Robbins asked Curtis to explain what was illegal about his conduct.  [ECF No. 65-5 at 02:45].  Curtis stated, "[w]hat is illegal about it is nothing."  [ECF Nos. 56-4 at 03:23; 56-5 at 02:45].  Curtis asked Robbins for a name and Robbins replied, "I don't have to give my name."  [ECF No. 56-6 at 02:56].  Curtis then brusquely retorted, "[h]e's just an angry little guy"

who should "go away." [ECF No. 56-5 at 03:29]. At this point, Robbins asked if he was "free to go" and Curtis answered in the affirmative. *Id.* at 03:35.

In response to this, Robbins stated he wished to remain on the sidewalk and further observe the police vehicles. [ECF No. 56-5 at 03:40]. DMPD Officer Joshua Rhamy ("Rhamy") told Robbins he was loitering and must leave. *Id.* at 03:44. Rhamy then told Robbins that "I am going to arrest you" if he did not vacate the area. *Id.* Before Robbins could respond, Youngblut offered to "make a suspicious activity case" so they could "confiscate the camera until we have a reason for what we are doing." *Id.* Youngblut stated he would hold onto the items until Robbins presented a "legitimate purpose" for having them. *Id.* at 04:15.

Youngblut then forced Robbins against a police vehicle and seized Robbins's camera and cell phone. [ECF No. 56-6 at 04:34]. Even after Robbins was arrested and his items seized, the number of officers on scene grew. [ECF No. 56-6]. The number of officers – either in official attire or street clothes – went from five to seven during the arrest. [ECF No. 56-5 at 07:00]. It increased from seven officers to thirteen over the next few minutes. *Id.* at 07:00–11:24. This occurred even though officers had not uncovered evidence of a crime. [ECF No. 56-4 at 13:50 (discussing how "nothing illegal" occurred)].

The incident ended with officers leaving the scene and taking custody of Robbins's camera and phone. [ECF No. 56-6 at 11:34]. Robbins was not told when, where, or how to recover his items. [ECF No. 56-5 at 11:00-13:00]. Robbins's camera and cell phone were released only after an attorney sent an official demand letter to the DMPD. [ECF No. 45-1 at 4–6 (Correspondence)]. Youngblut stated his receipt of the letter on May 21, 2018 was the reason he spoke with command staff, reached out to City Attorney Douglas Philiph, and arranged the return of the items. *Id.* at 64 (Youngblut Depo.). Youngblut had not applied for a warrant to seize or search the items by the

time he received the letter.  *Id.*  Robbins was able to retrieve his camera and cell phone for the first

time on May 22, 2018.  [ECF No. 45-1 at 6].

B.  *Procedural Background*

i.  Proceedings at the District Court

On September 5, 2018, Robbins filed this lawsuit against Defendant City of Des Moines,

as well as Defendants Curtis, Leo, and Youngblut, alleging violations of the First and Fourth

Amendments of the United States Constitution.  [ECF No. 1].  Robbins maintained that Defendants

infringed on his First Amendment rights by retaliating against him when he exercised his right to

record police vehicles.  *Id.* at 11.  He asserted Defendants violated his Fourth Amendment rights

in three ways: 1) they conducted an investigatory stop without reasonable suspicion that criminal

activity was afoot; 2) Defendants arrested him without probable cause; and 3) they seized custody

of his camera and cell phone for an extended period without a warrant.  *Id.* at 14.  Finally, Robbins

brought a claim for municipal liability against the City of Des Moines.  *Id.* (citing *Monell v. Dep't.*

*of Soc. Servs., of the City of N.Y.*, 436 U.S. 658 (1978)).

On January 15, 2019, Defendants filed a motion for summary judgment based on qualified

immunity.  [ECF No. 12].  They argued they were entitled to summary judgment on Robbins's

First Amendment claim because it was not clearly established, at least in the United States Court

of Appeals for the Eighth Circuit, that Robbins had a constitutional right to record police vehicles.

*Id.* at 12.  Defendants asserted no violation of the Fourth Amendment occurred because the officers

only conducted an investigatory stop after developing reasonable suspicion and they never arrested

Robbins.[1]  [ECF No. 12-1 at 8].  They maintained that Robbins's uncooperative behavior provided

---

[1] The Eighth Circuit characterized this argument as "[t]he defendant officers assert, without meaningful analysis, that Robbins was never arrested."  *Robbins v. City of Des Moines*, 984 F.3d 673, 679 (8th Cir. 2021).

them with probable cause, or at least arguable probable cause, to believe the camera and cell phone were being used for criminal activities, which made seizure of the items appropriate. *Id.* at 9–10. Finally, Defendant City of Des Moines contended no municipal policy or action caused any alleged constitutional tort. *Id.* at 16.

After additional briefing, [ECF Nos. 15–15-4], Senior United States District Court Judge Charles Wolle granted summary judgment for Defendants on all three of Robbins's claims. [ECF No. 19]. On the First Amendment claim, Judge Wolle noted, "[a]ssuming *arguendo* that Count I asserts a constitutional right that was clearly established . . . the record does not create any genuine fact dispute as to whether retaliation occurred." *Id.* at 5. On Robbins's Fourth Amendment claim, Judge Wolle held, "Robbins's actions in photographing police cars outside the station created reasonable suspicion among the officers that he was engaged in criminal activity." *Id.* at 6–7. Judge Wolle further reasoned that "[b]ecause the officers detained Robbins and seized his camera under reasonable suspicion of criminal activity, Robbins has failed to assert a constitutional violation." *Id.* at 7. On the *Monell* claim, Judge Wolle decided, "the evidence in the record is insufficient to establish that the City of Des Moines has a 'policy of inaction' allowing officers to prevent citizens from recording officers' activity." *Id.* Plaintiff timely appealed. [ECF No. 21].

ii.   Proceedings before the Eighth Circuit

On January 6, 2021, the Eighth Circuit affirmed in part and reversed in part Judge Wolle's grant of summary judgment. [ECF Nos. 26; 28]. The Eighth Circuit affirmed the grant related to Robbins's First Amendment claim "[b]ecause Robbins has not shown a deprivation of a clearly established right." *Robbins*, 984 F.3d at 678. On *Monell*, it held, "[t]he evidence on this record is insufficient to establish deliberate indifference," which is a required element of a "failure to train" claim. *Id.* at 682. Lastly, the panel also upheld Judge Wolle's ruling that Defendants Youngblut,

Leo, and Curtis had reasonable suspicion, or at least arguable reasonable suspicion, to conduct the initial investigatory stop. *Id.*

However, the court reversed the grant of summary judgment for Defendants on two Fourth Amendment issues. On the claim of unconstitutional arrest, it held "the record reflects the officers told Robbins he was arrested after he had been detained and frisked." *Robbins*, 984 F.3d at 679. This led the court to reason that the remaining legal question was "whether the arrest was supported by probable cause." *Id.* It commented that "at most, the officers at the scene asserted two possible theories for probable cause," but neither was sufficient. *Id.* at 680.

Defendants' first theory was that Robbins loitered in violation of the Des Moines Municipal Code.[2] *Robbins*, 984 F.3d at 680. The Eighth Circuit reasoned that "viewing the facts in a light most favorable to Robbins, a reasonable officer would not have believed he had probable cause to arrest Robbins for loitering." *Id.* This was because there was "no evidence Robbins was blocking the sidewalk or disrupting the activity of the police station." *Id.*

Defendants' second asserted basis for probable cause was "Robbins reported a false name, John Doe, in violation of Iowa's false-reporting statute." *Robbins*, 984 F.3d at 680. The Eighth Circuit highlighted two separate issues with this contention. First, it noted they had "some doubt" claiming to be John Doe is a false report under Iowa law. *Id.* (citing *State v. Bynum*, 937 N.W.2d 319, 325 (Iowa 2020)). Second, Defendants could not rely on this report as the basis for the arrest "because Robbins did not say his name was 'John Doe' until *after* he was arrested." *Id.* (emphasis in original). In short, both justifications were unpersuasive. *Id.*

---

[2] The sections of the municipal code prohibit (1) collecting on a sidewalk "to the hindrance or obstruction to free passage of any person passing on or along any sidewalk or street in the city" and (2) loitering "in front of or around . . . public buildings[s] . . . so as to obstruct, hinder, prevent, or disrupt the normal functions carried on therein . . . [or] persons passing by or into or out of . . . the public building." Des Moines Municipal Code §§ 70-38, 70-39(a)).

Additionally, the Eighth Circuit reversed the grant of summary judgment for Defendants on the seizure of Robbins's camera and cell phone. *Robbins*, 984 F.3d at 680. The court noted, "[t]he warrantless seizure of property is per se unreasonable unless it falls within a well-defined exception to the warrant requirement." *Id.* (citing *Dixon v. Lowery*, 302 F.3d 857, 862 (8th Cir. 2002)). It held "the duration of the seizure – twelve days – was unreasonable." *Id.* Defendants' failure to "tell Robbins with any precision when or how he would get his property back" magnified the problem. *Id.* The panel concluded, "the governmental interest, presumably to dispel whatever suspicion the officers had about Robbins, does not outweigh the intrusion to Robbins." *Id.* In short, "[t]he defendant officers violated Robbins's clearly established right to be free of unreasonable seizures of his property." *Id.*

### iii. Remand to District Court

The Eighth Circuit remanded the case for additional proceedings on the remaining counts. After the remand, parties filed cross-motions for summary judgment. [ECF Nos. 35; 36]. Robbins seeks a ruling in his favor on the two remaining Fourth Amendment issues: 1) whether Defendant Officers arrested him without probable cause; and 2) whether they seized his property without probable cause. [ECF No. 36 at 1–2]. He argues that the Eighth Circuit's opinion decided the remaining questions. [ECF No. 36-2 at 1]. Defendants argue the opinion only addressed whether the record created a genuine dispute of material fact when the evidence was viewed in the light most favorable to Robbins. [ECF No. 42-1 at 2]. They further argue the decision was not a binding determination on this Court because the burdens and for whom the inferences drawn are reversed and the record is different. [ECF No. 42-1 at 2].

Defendant Officers filed a partial Motion for Summary Judgment, asserting that the record demonstrates "Defendants Joseph Leo and Christopher Curtis" are entitled to summary judgment.

[ECF No. 35].  Specifically, the Motion contends Curtis and Leo "were not arresting officers, nor were they responsible for seizing Mr. Robbins's property" because neither directly engaged in the activities.  [ECF No. 35-1 at 6].  Plaintiff asserts that they engaged in the search and seizure in a manner sufficient to create liability.  [ECF No. 43-1 at 7].  Defendants did not file a reply.

For the reasons below, Plaintiff's Motion for Summary Judgment is GRANTED, while Defendants' Motion for Summary Judgment is DENIED.

## II.     LEGAL STANDARDS

### A.  *Summary Judgment*

"Summary judgment is proper if the movant 'shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *United States v. Meyer,* 914 F.3d 592, 594 (8th Cir. 2019) (quoting Fed. R. Civ. P. 56(a)).  "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case."  *Amini v. City of Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "If the moving party has met this burden . . . the non-moving party must set forth specific facts showing that there are genuine issues for trial."  *Bankston v. Chertoff*, 460 F. Supp. 2d 1074, 1085 (D. N.D. 2006).  To preclude the entry of summary judgment, the nonmovant must make a sufficient showing on every essential element for which it has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  When considering a summary judgment motion, a court must view "evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences from that evidence in favor of the nonmoving party."  *Cullor v. Baldwin*, 830 F.3d 830, 836 (8th Cir. 2016) (quoting *Smith v. URS Corp.*, 803 F.3d 964, 968 (8th Cir. 2015)).  However, a court must reject an interpretation of events in favor of a party if it is blatantly contradicted by the

record. *Wallingford v. Olson*, 592 F.3d 888, 892 (8th Cir. 2010) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2010)). Summary judgment is most appropriate when the "issues are primarily legal" in nature. *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Shirley*, 96 F.3d 1108, 1111 (8th Cir. 1996).

### B. Fourth Amendment – Seizure of Person

"The Fourth Amendment guarantees the right to be free from 'unreasonable searches and seizures.'" *Garcia v. City of New Hope*, 984 F.3d 655, 663 (8th Cir. 2021) (quoting U.S. Const. amend. IV). "A person is seized within the meaning of the Fourth Amendment 'when the officer, by means of physical force or show of authority, terminates or restrains [the person's] freedom of movement." *United States v. Warren*, 984 F.3d 1301, 1303 (8th Cir. 2021) (alteration in original) (quoting *Brendlin v. California*, 551 U.S. 249, 254 (2007)). The relevant inquiry is "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Davis v. Dawson*, 33 F.4th 993, 997 (8th Cir. 2022) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). "Circumstances indicative of a seizure may include a 'threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person . . . or the use of language or tone of voice indicating that compliance . . . might be compelled.'" *United States v. Tovar-Valdivia*, 193 F.3d 1025, 1027 (8th Cir. 1999) (quoting *United States v. Galvan-Muro*, 141 F.3d 904, 906 (8th Cir. 1998)).

"Seizures fall into two categories: investigative stops and arrests." *United States v. Dixon*, 51 F.3d 1376, 1380 (8th Cir. 1995). "There is no bright line of demarcation between investigative stops and arrests." *United States v. Miller*, 974 F.2d 953, 957 (8th Cir. 1992) (citing *United States v. Sharpe*, 470 U.S. 675, 685-86 (1985)); *United States v. Bloomfield*, 40 F.3d 910, 916 (8th Cir. 1994) (when distinguishing between the two, courts consider the length of detention and conduct of law enforcement officers). An investigative detention is "temporary" and may "last no longer

than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). "[T]he investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *United States v. Willis,* 967 F.2d 1220, 1224 (8th Cir. 1992) (quoting *Royer*, 460 U.S. at 500).

"An investigative detention may turn into an arrest if it 'lasts for an unreasonably long time or if officers use unreasonable force." *United States v. Sanchez*, 417 F.3d 971, 975 (8th Cir. 2005) (quoting *United States v. Navarrete-Barron*, 192 F.3d 786, 790 (8th Cir. 1999)). Courts use many factors to determine whether a stop escalated into an arrest: "(1) The number of officers and police cars involved, (2) the nature of the crime . . . (3) the strength of the officer's [] suspicions, (4) the need for immediate action . . . (5) the presence or lack of suspicious behavior." *United States v. Seelye*, 815 F.2d 48, 50 (8th Cir. 1987). Whether a seizure constituted an arrest is a question of law. *Bloomfield*, 40 F.3d at 916.

If a seizure escalates into an arrest, the next question is whether the arrest was supported by probable cause. This is because "[a] warrantless arrest is consistent with the Fourth Amendment [only] if it is supported by probable cause." *Thurairajah v. City of Fort Smith, Arkansas*, 925 F.3d 979, 983 (8th Cir. 2019) (citation omitted). "The substance of all the definitions of probable cause is a reasonable ground for belief of guilt." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). "An officer possesses probable cause when the totality of the circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Borgman v. Kedly*, 646 F.3d 518, 523 (8th Cir. 2011) (quoting *Fisher v. Wal-Mart Stores, Inc. et al.,* 619 F.3d 811, 816 (8th Cir. 2010)). This standard only requires the "probability on which reasonable and prudent people, not legal technicians, act." *Kaley v. United States*,

571 U.S. 320, 338 (2014).   Probable cause is intended to "'safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime." *Bell v. Neukirch*, 979 F.3d 594, 603 (8th Cir. 2020) (quoting *Brinegar*, 338 U.S. at 176).

### C.   Fourth Amendment – Seizure of Property

"[S]eizures of property are subject to Fourth Amendment scrutiny even though no search within the meaning of the Amendment has taken place." *Soldal v. Cook Cnty., Illinois*, 506 U.S. 56, 68 (1992).   A seizure is a "meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).   "Not 'every governmental interference with a person's property constitutes a seizure of that property under the Constitution.'" *Burlison v. Springfield Pub. Schs.*, 708 F.3d 1034, 1039 (8th Cir. 2013) (quoting *United States v. Va Lerie*, 424 F.3d 694, 702 (8th Cir. 2005) (en banc)).   This is because "[t]he Fourth Amendment does not prohibit all unwarranted seizures, only unreasonable ones." *PPS, Inc. v. Faulkner Cnty., Arkansas*, 630 F.3d 1098, 1103 (8th Cir. 2011) (emphasis added).

"The reasonableness determination [must] reflect a 'careful balancing of governmental and private interests.'" *Soldal*, 506 U.S. at 71 (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985)).   "The warrantless seizure of property is per se unreasonable unless it falls within a well-defined exception to the warrant requirement." *Robbins*, 984 F.3d at 680 (citing *Dixon*, 302 F.3d at 862).   One exception is that "[b]rief detentions of personal effects may be so minimally intrusive of Fourth Amendment interests that strong countervailing governmental interests will justify a seizure based only on specific articulable facts that the property contains contraband or evidence of a crime." *United States v. Place*, 462 U.S. 696, 706 (1983).

III.    ANALYSIS OF PLAINTIFF'S MOTION[3]

*A.  Fourth Amendment Arrest Claim*

There are three relevant questions regarding Plaintiff's Motion for Summary Judgment on the Fourth Amendment arrest claim.  First, whether the second investigatory stop escalated into an arrest.  Second, whether each officer's individual conduct was sufficient to create liability.  Third, if there is a genuine dispute of material fact on any fact related to the existence of probable cause. The answer to the first question is yes; the answer to the second inquiry is yes, and the answer to the third query is no.  Accordingly, Plaintiff is entitled to summary judgment.

i.    Arrest[4]

Moments after being released, Robbins stated he wished to remain on the sidewalk.  [ECF No. 56-5 at 03:40].  DMPD Officer Joshua Rhamy ("Rhamy") informed Robbins he was loitering and must leave.  *Id.* at 03:44.  He repeatedly told Robbins "I am going to arrest you" if he did not vacate the area.  *Id.*  Before Robbins could respond, Youngblut offered to "make a suspicious activity case" so they could "confiscate the camera until we have a reason for what we are doing." *Id.*  Youngblut stated that he would hold onto the camera and cell phone until Robbins presented a "legitimate purpose" for possessing them.  *Id.* at 04:15.  Robbins appears to have been pushed against the police vehicle seconds later.  [ECF No. 56-3 at 04:34].

No individual – reasonable or not – would believe they could leave in this situation for three reasons.  *Mendenhall*, 446 U.S. 544, 554 (1980).  First, Rhamy and Youngblut repeatedly

---

[3] Resolution of Plaintiff's Motion for Summary Judgment in this case necessarily addresses Defendants' Motion for Summary Judgment.

[4] The Court starts its analysis immediately after the termination of the initial investigatory stop, which ended when Curtis stated Robbins was free to leave, because the Eighth Circuit held Defendants were entitled to qualified immunity for this conduct. *Robbins,* 984 F.3d at 679–680.

threatened to arrest Robbins, which constitutes a seizure under the Fourth Amendment. *Vickroy v. City of Springfield, Missouri*, 706 F.2d 853, 854 (8th Cir. 1983); *United States v. Hathcock*, 103 F.3d 715, 719 (8th Cir. 1997) (an individual was not seized because "[t]he record in this case is devoid of any evidence of threats or coercion."). The threats were not chimerical, as Defendants explained in detail how they would carry out the arrest, why they were doing so, and carried out the arrest in the described manner.

Second, Curtis, Leo, and Youngblut surrounded Robbins to restrict his movement and prevent him from leaving. [ECF No. 56-6 at 04:34]. This conduct is a seizure under the Fourth Amendment in the absence of any external restriction on the individual's freedom of movement. *United States v. Lillich*, 6 F.4th 869, 875 (8th Cir. 2021) (the "free to leave analysis is inapplicable" when an individual is not free to leave due to . . . being on a bus). There were no other restrictions on Robbins's movement such as those discussed in *Lillich*, which means the restriction was plainly caused by Defendants' conduct. [ECF Nos. 56-5; 56-6].

Third, there appears to have been an application of physical force to push Robbins against the police vehicle. The physical touch of an officer upon an individual is a seizure. *California v. Hodari D.*, 499 U.S. 621, 625 (1991) (seizure is "effected by the slightest application of physical force."). The application of physical force is sufficient to constitute a seizure regardless of whether the individual yields to that force. *Cole v. Bone*, 993 F.2d 1328, 1332 (8th Cir. 1993).

Unlike the initial investigatory stop, where Defendants could have reasonably believed that Robbins presented a security risk to the DMPD, the second seizure occurred after these concerns were allayed. Defendants asked Robbins questions, frisked him, found nothing, and then released him. Defendants seized Robbins a second time after all these steps, which means they acted in a manner that was "more intrusive than necessary for an investigative stop." *Fakorzi v. Dillard's*

*Inc.*, 252 F. Supp. 2d 819, 827 (S.D. Iowa 2003) (quoting *United States v. Rose*, 731 F.2d 1337, 1342 (8th Cir. 1984)). Accordingly, the second seizure can only fairly be said to be an arrest.[5]

## ii. Probable Cause

Defendants propound two sources of probable cause to justify the arrest: Robbins's alleged loitering and Robbins potentially interfering with the DMPD's narcotics operation. [ECF No. 42 at 12]. The undisputed audio and video recordings provide no evidence upon which a reasonable jury could find Robbins was loitering or that he interfered with the DMPD's narcotics operation. Thus, even when taking the inferences in the light most favorable to Defendants, they do not show that Defendants had probable cause to arrest Robbins.

## a. Loitering

Robbins was taking photos and videos of vehicles in front of the DMPD station that he believed were illegally parked. [ECF No. 56-1 (Exterior East Video)]. An unnamed officer saw Robbins taking photos and videos of the cars in the area, briefly watched him, got in her police vehicle, and left without issue. *Id.* at 00:45. Two other officers – Demoss and Strawser – observed Robbins capture photos of the vehicles but did not confront him or stop him. *Id.* Moments later, Youngblut walked past Robbins, watched him recording the police vehicles, and did not engage. *Id.* Youngblut did not adjust or change the path he walked due to Robbins's presence. *Id.*

Even with the inferences drawn in favor of Defendants, there is no genuine dispute whether Robbins loitered when he recorded the first set of photos and videos of unmarked police vehicles, i.e., those in front of the police station. The videos demonstrate Robbins's conduct did not interfere with operations of the police station as three officers walked right by Robbins and a fourth drove by him with no issue. No officer altered or adjusted their conduct due to Robbins's presence.

---

[5] The Eighth Circuit characterized this second stop as an arrest. *Robbins*, 984 F.3d at 679.

There is no genuine dispute of material fact whether Robbins loitered in front of the police station because the video shows he did not. *Ransom v. Grisafe*, 790 F.3d 804, 807 (8th Cir. 2015) (quoting *Scott*, 550 U.S. at 380) (where possible a court should "view[] the facts in the light depicted by the videotape.").

Robbins then walked to the other end of the street to capture additional photos and videos of unmarked police vehicles. [ECF No. 56-1 at 05:00]. While taking them, an officer in a light blue dress shirt across the street appears to continue with his usual business for several minutes. [ECF No. 56-3 at 01:00-03:27]. When Youngblut pulled his vehicle alongside Robbins to speak to him, other officers continued their work with no interruption. *Id.* For example, one police vehicle pulled into the building across the street from Robbins; an officer exited the vehicle and entered the building without issue. *Id.* at 02:50. The officer in the light blue dress shirt and another in a green shirt observed the ongoing interaction between Youngblut and Robbins, but continued on their way. *Id.* at 03:40-04:00. No person lost the ability to walk on the sidewalk where Robbins was located, nor did anyone have to change the path on which they walk to avoid him. *Id.*

Even with the inferences drawn in favor of Defendants, there is no genuine dispute whether Robbins loitered when he recorded a second set of photos and videos of unmarked police vehicles. Robbins's conduct did not interfere with operations of the police station as officers walked right by him and others continued their work without issue. No officer adjusted their work behavior or responded differently due to his presence. There is no genuine dispute of material fact whether Robbins loitered because the recordings show he did not. *Bernini v. City of St. Paul*, 665 F.3d 997, 1004 (8th Cir. 2012) (quotation omitted).

Simply put, the videos show Robbins did not block any sidewalk or disrupt the DMPD's official activities, which means he was not loitering. While reasonable inferences must be drawn

in favor of Defendants, the Court need not accept a version of facts so "blatantly contradicted by the record" that "no reasonable jury could believe it." *Marksmeier v. Davie*, 622 F.3d 896, 900 (8th Cir. 2010) (quoting *Scott*, 550 U.S. at 380).  In short, the asserted loitering cannot serve as a basis for probable cause to support Defendants' arrest of Robbins.

b.  Proximity to Narcotics Office

Defendants' second supposed source of probable cause is that Robbins's "proximity to the Des Moines Police Department's narcotics office" interfered with official business.[6]  [ECF No. 42-1 at 11].  Defendants argue Robbins may have engaged in "gathering intelligence around this area in order to identify under-cover officers and thwart drug crime investigations." *Id.*  Robbins asserts that his proximity to the office "does not give Defendants' probable cause to believe he was engaged in criminal activity." [ECF No. 45 at 3].  There is no evidence demonstrating Robbins was too close to the office or Defendants arrested Robbins because of his proximity.  Thus, this assertion cannot serve as the basis for probable cause.

The basis for Defendants' argument is their depositions.  [ECF No. 45-1 at 7 (Youngblut Depo.); 147 (Leo Depo.)].  Youngblut stated that when he saw Robbins, he "knew and recognized" the vehicles as "our narcotics vehicles." *Id.* at 39.  He explained Robbins's conduct could "prevent an informant" from "coming and having a discussion in an alleyway behind that station or behind that narcotics office." *Id.* at 52.  He further maintained that "[b]y him standing there, acting the way he's acting . . . he's preventing us from doing the work that goes on back there." *Id.* at 60. These statements do not explain how Robbins was too close to the building or how his conduct was illegal.

---

[6] Whether Robbins' proximity to the narcotics office establishes probable cause is an open legal question because Defendants did not explain what laws could be violated if a person is "too close" to a narcotics office.  [ECF No. 42 at 10–12].

This conclusion is supported by the fact that Curtis, Leo, and Youngblut admit Robbins's conduct was suspicious, but not unlawful, in these same depositions.  Robbins's attorney asked Youngblut if he believed Robbins engaged in unlawful conduct.  [ECF No. 45-1 at 44].  Youngblut stated, "[h]e's being suspicious, but no, I have not seen him do anything other than film people's personal vehicles and undercover narcotics cars."  *Id.* at 45.  Robbins's attorney asked Leo "when you say it's suspicious, [of] what specific criminal activity did that create suspicion?"  [ECF No. 45-1 at 151].  Only after being asked the question three times did Leo reply, "I guess I would say no criminal activity at that specific moment."  *Id.* at 153.  When asked whether taking the photos was unlawful, Curtis stated, "it's not unlawful, but it's definitely suspicious."  *Id.* at 178.

Beyond the depositions, the undisputed videos show Robbins was a considerable distance from the DMPD's narcotics office.  [ECF Nos. 56–56-6].  An exterior video shows Robbins always remained on the sidewalk across the street from the building.  [ECF No. 56-3 at 01:00-04:00].  A wide two-lane street separates the sidewalk and narcotics office.  *Id.*  There does not appear to be any messages or signs suggesting that an individual stay away from the building.  *Id.*  In light of these circumstances, Robbins was not too close to the DMPD's narcotics office by virtue of his presence on a public sidewalk across the street.  *Id.*

Simply put, Defendants did not produce evidence suggesting Robbins was too close to the DMPD's narcotics office or interfered with its functions.  *State v. Smithson*, 594 N.W.2d 1, 2–3 (Iowa 1999) (interference with official acts requires "active interference" with officers executing their peace-keeping duties.).  They did not provide a legal basis to suggest this conduct, even when presumed, could be a crime or would serve as a basis for probable cause.  In light of this, Robbins's proximity to the office did not provide Defendants with probable cause to arrest him.

### iii.  Conclusion

The uncontested recordings demonstrate that Defendants arrested Robbins.  Rhamy and Youngblut directly arrested Robbins, while Curtis and Leo prevented him from leaving during the arrest.  Defendants did not have probable cause to arrest Robbins, even with the inferences drawn in their favor.  Robbins is entitled to summary judgment on his Fourth Amendment arrest claim.

### B.  *Fourth Amendment Property Seizure Claim*

There are two relevant questions on Robbins's Fourth Amendment property seizure claim. First, whether Defendants interfered with Robbins's possessory interests in his camera and cell phone through a warrantless seizure.  *Jacobsen*, 466 U.S. at 113.  Second, if Defendants interfered with this interest, whether the seizure falls into a well-defined exception of conduct that is tolerated by the Fourth Amendment.  *Robbins*, 984 F.3d at 681.  Robbins is entitled to summary judgment because Defendants removed the items from his custody without a warrant and their conduct does not fall into a well-defined exception to the rule that warrantless seizures are per se unreasonable.

### i.  Meaningful Interference

Seizure of property is a "meaningful interference with an individual's possessory interests in that property."  *Jacobsen*, 466 U.S. at 113.  "[This] definition follows from our oft-repeated definition of the 'seizure' of a person within the meaning of the Fourth Amendment – meaningful interference, however, brief, with an individual's freedom of movement."  *United States v. Harvey*, 961 F.2d 1361, 1363 (8th Cir. 1992) (alteration in original) (quoting *Jacobsen*, 466 U.S. at 113 n.5).  A meaningful interference also occurs when an official's conduct deprives an individual of custody of a personal item such as a checked luggage bag.  *Burlison*, 708 F.3d at 1039.  Cameras and cell phones are protected personal effects for the purposes of a seizure analysis.  *United States*

*v. Waldrip*, No. 4:18-cr-00163-RGE-CFB-2, 2019 WL 13143479, at *7 (S.D. Iowa Apr. 3, 2019)

(citing *Riley v. California*, 573 U.S. 373, 393–397 (2014)).

The parties agree Defendant Youngblut interfered with Robbins's possessory interests in

the camera and cell phone.[7]  [ECF Nos. 35-1 at 11; 43-1 at 8–10].  This agreement is well supported

by the evidence because the recordings demonstrate Youngblut seized Robbins's property.  [ECF

No. 56-5 at 04:10; 07:00-07:10].  Youngblut was able to remove the items from Robbins's custody

in significant part because Curtis and Leo aided him in effectuating the arrest and preventing

Robbins from leaving.  *Id.*  After Youngblut removed the camera and cell phone from Robbins's

custody, he did not apply for a warrant.  [ECF No. 45-1 at 2; 4–5].  Neither did Defendants Curtis

or Leo.  Instead, the items remained in lock-up and entirely unavailable to Robbins until May 22,

2018.  *Id.*  Defendants' removal of the items from Robbins's control, which deprived Robbins of

custody over the items, was an interference with his possessory rights.  *Va Lerie*, 424 F.3d at 702.

Accordingly, Defendants seized Robbins's property within the meaning of the Fourth Amendment.

ii.   Well Defined Exception

Defendants contend the camera was returned to Robbins six days after it was seized without

a warrant.[8]  [ECF No. 42-1 at 11].  Based on this, Defendants contend there is a genuine dispute

of material fact because Youngblut holding onto the items for six days without a warrant may have

been reasonable under *Place*.  *Id.*  Plaintiff avers the items were returned twelve days later and the

---

[7]  They disagree on whether Curtis and Leo interfered with Robbins's possessory interests in his camera and cell phone.

[8] The Court is not convinced there is "a real basis in the record" for Defendants' contention the items were returned to Robbins after six days.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).  This is because Defendants do not cite any portion of the record to support this claim, [ECF No. 42-1], and Robbins produced the email chain confirming when the items could first be picked up, which was May 22, 2018.  [ECF No. 44-1 at 4–7].

Eighth Circuit already held the delay was unreasonable.  [ECF No. 45 at 6].  The factual dispute, even if genuine, is immaterial.  This is because the length of time the items were withheld from Robbins's custody without a warrant, whether it was six days or twelve, does not fall into a well-defined exception to the rule that warrantless seizures are per se unreasonable.

One exception to the general rule that warrantless seizures are per se unreasonable is brief on-the-spot inquiries.  *Place*, 462 U.S. at 706.  A twelve-day seizure is not a brief detention under *Place* and is sufficiently extended to fall outside of its protections.  *Robbins*, 984 F.3d at 681.  A two-day seizure of a cell phone is an impermissibly lengthy detention under this constitutional rule.  *Id.* (citing *United States v. Babcock*, 924 F.3d 1180, 1190–91 (11th Cir. 2019)).  Likewise, a four-day seizure of a personal effect, specifically green cards that were alleged to have been forged, was too long under *Place*.  *Lee v. City of Chicago*, 330 F.3d 456, 464 (7th Cir. 2003) (citing *Farm Lab. Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 548 (6th Cir. 2002)).

The parties dispute whether Defendant Youngblut returned Robbins's camera and cell phone after six days or twelve.  [ECF Nos. 42-1 at 11; 45 at 6].  If the camera and cell phone were kept from Robbins's custody for six days, it would be an impermissible length of time.  *Babcock*, 924 F.3d at 1190–91.  Likewise, the Eighth Circuit has already held that Defendants retaining the items for twelve days was impermissible.  *Robbins*, 984 F.3d at 681.  The dispute is not material because the outcome – a violation of the Fourth Amendment – is the same regardless of which facts are correct.  *Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1048 (8th Cir. 2022) (quoting *Anderson*, 477 U.S. at 248) ("A fact is 'material' if it may 'affect the outcome of the suit.'").

Defendant did not create a genuine dispute of material fact on the existence of an exception to the general rule warrantless seizures are per se unreasonable.  In its absence, their seizure of the

camera and cell phone without a warrant were per se unreasonable under the Fourth Amendment. Thus, Robbins is entitled to summary judgment on his Fourth Amendment property seizure claim.

### C.  Summary on Plaintiff's Motion

Robbins has two remaining Fourth Amendment claims.  On the improper arrest claim, the record demonstrates that Defendants arrested Robbins without probable cause.  On the improper seizure of Robbins's property, Defendants took Robbins's camera and cell phone without a warrant and retained them for twelve days, which defeats any possibility the seizure fell into a well-defined exception.  No reasonable jury could conclude Defendants did not violate Robbins's rights because of the undisputed video evidence, which means Plaintiff is entitled to summary judgment.

### IV.    CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment is GRANTED, while Defendants' Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

Dated this 4th Day of August, 2022

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT